IN THE UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| **STEPHEN BRENNAN**, of York, in the County of York, and State of Maine, <br><br> Plaintiff <br><br> v. <br><br> **JONATHAN ROGERS,** a resident of the State of Maine, <br><br> and <br><br> **THE TOWN OF YORK, MAINE,** a governmental municipality in the County of York and State of Maine. <br> Defendants | COMPLAINT |

## COMPLAINT AND REQUEST FOR JURY TRIAL

NOW COMES the Plaintiff, Stephen Brennan, D.O., by and through counsel and complains against the Defendants as follows:

## NATURE OF THE CASE

I.   This case involves the use of unreasonable and excessive force resulting in the brutal assault on the Plaintiff, Stephen Brennan, D.O., by Defendant, Patrolman Jonathan Rogers and a police K9 under Patrolman Rogers' control. The Town of York, Maine failed to adequately train, adequately supervise, and/or have adequate policies in place to prevent the use of unreasonable and excessive force by Patrolman Jonathan Rogers and the K9.  As a result, the Plaintiff, Stephen Brennan, suffered severe and permanent bodily injuries and disfigurement.

1

## JURISDICTION AND VENUE

II. This claim is brought under the provisions of 42 U.S.C. §§ 1983, state common law and the Maine Civil Rights Act. This Court has jurisdiction to hear this claim pursuant to 28 U.S.C. § 1331. Plaintiff requests that the court exercise its supplemental jurisdiction pursuant to 28 U.S.C. §1367.

## PARTIES

1. Plaintiff, Stephen Brennan, D.O., is and at all times herein material was a resident of the Town of York, in the County of York, and State of Maine.

2. Defendant, Jonathan Rogers, was at all times relevant a resident of the State of Maine and a police officer employed by the Town of York, Maine.

3. Defendant, Town of York is a governmental municipality which, at all times relevant to this Complaint, employed Defendant Jonathan Rogers and was responsible for hiring, training, supervising and disciplining employees of the Town of York Police Department.

## FACTS COMMON TO ALL COUNTS

4. At approximately 12:15 a.m., on September 20, 2019, the Plaintiff, Stephen Brennan, D.O., a local pediatrician, was driving north on Route 1 in the Town of York, Maine.

5. As he was driving, Dr. Brennan passed what appeared to be York Police Department vehicles observing traffic in the area of the Meadowbrook Plaza.

6. After passing by the police cars, Dr. Brennan continued to travel north on Route 1.

7. Dr. Brennan saw another car coming towards him traveling south on Route 1.

8. As is common practice, Dr. Brennan flashed the high beams of his car at the oncoming vehicle to warn the other driver that they were about to pass two police cars.

9. Unbeknownst to Dr. Brennan, the vehicle traveling south was a York Police Department vehicle that was being operated by Patrolman Jonathan Rogers.

10. Patrolman Jonathan Rogers immediately made a U-turn to position himself behind Dr. Brennan's vehicle.

11. Dr. Brennan immediately activated his right directional signal and pulled to the right side of Route 1 before Patrolman Rodgers even activated his blue lights.

12. Dr. Brennan is familiar with a number of York Police Department officers, and when he was safely pulled over on the side of the road, Dr. Brennan exited his vehicle to explain to the officer why he activated his high beam lights.

13. When Dr. Brennan exited his vehicle, he walked toward Patrolman Roger's vehicle in a non-threatening manner.

14. In response, Patrolman Rodgers immediately drew his service weapon and demanded that Dr. Brennan put his hands up.

15. Patrolman Rodgers had a police K9 in his vehicle that immediately started barking loudly making it difficult to hear.

16. Dr. Brennan complied with Patrolman Rodgers instruction to put his hands up but continued slowly walking toward Patrolman Rodgers so he could speak with him.

17. Patrolman Rodgers then ordered Dr. Brennan to "stop," and Dr. Brennan complied with his hands still raised in the air.

18. Surprised at Patrolman Rodger's response, Dr. Brennan stated, "give me a break" and then asked Patrolman Rodgers "who are you?"

19. Patrolman Rodgers did not respond to Dr. Brennan's question.

20. Dr. Brennan then turned around to go back to the safety of his vehicle.

21. Patrolman Rodgers again instructed Dr. Brennan to "stop," and Dr. Brennan complied.

22. Patrolman Rodgers, with his firearm still pointing at Dr. Brennan then threatened to release the K9.

23. Patrolman Rodgers then instructed Dr. Brenan to turn around and get on the ground.

24. Dr. Brennan asked Patrolman Rodgers if he was going to shoot him and then began to comply with the request to turn around and get on the ground.

25. As Dr. Brennan was in the process of getting down on his right knee to comply with Patrolman Rodger's instructions, Patrolman Rodgers activated a remote release mechanism on his police car door releasing the K9 from the vehicle.

26. Only approximately 40 seconds elapsed between the time Dr. Brennan exited his vehicle and the moment that Patrolman Rodgers activated the remote release sending the K9 to attack Dr. Brennan.

27. At no point during the approximately 40 seconds did Patrolman Rodgers make any attempt to de-escalate the situation.

28. Dr. Brennan was already on the ground when the K9 viciously attacked him, first biting him on the left arm, and then biting him on the left thigh.

29. As Dr. Brennan was being attacked by the K9, Patrolman Rodgers attempted to wrestle Dr. Brennan onto his stomach and struck Dr. Brennan in the face with his right hand.

30. As Dr. Brennan was being attacked by the K9, Patrolman Rodgers used his right knee to deliver a blow to Dr. Brennan's lower back.

31. Throughout this encounter, even though Dr. Brennan was on the ground being attacked by the K9, Patrolman Rodgers repeatedly instructed Dr. Brennan to "get on the ground."

32. Patrolman Rodgers then put both of his knees on Dr. Brennan's back placing his full bodyweight on Dr. Brennan while he attempted to place him in handcuffs.

33. The entire time Patrolman Rodgers was on Dr. Brennan's back, the K9 was biting Dr. Brennan's left leg and the dog was violently shaking his head back and forth.

34. After Patrolman Rodgers placed Dr. Brennan in handcuffs, he gave the K9 the command "out," and took control of the K9 by its collar.

35. After gaining control of the K9, Patrolman Rodgers allowed the dog to lunge forward and bite Dr. Brennan again, this time on the left upper thigh, while Dr. Brennan was fully secured in handcuffs face down on the ground.

36. Dr. Brennan was transported from the scene to York Hospital where he was a staff physician at the time.

37. Dr. Brennan was kept in handcuffs while being treated at York Hospital.

38. When he arrived at the hospital, Dr. Brennan already had two black eyes and the emergency room examination revealed that he had a chest wall injury, decreased breath sounds, abrasions to his left arm, multiple puncture wounds to both legs, a deep irregular laceration about 3 cm wide to his calf, and deep complex irregular laceration to his left medial thigh and a 2 cm laceration to his right lateral thigh.

39. Dr. Brennan was also diagnosed with a traumatic hyphema of his left eye and increased intraocular pressure.

40. Dr. Brennan's wounds were treated at York Hospital and he was released home in the early morning hours of September 20, 2019.

41. Dr. Brennan has suffered from Type 1 diabetes since he was diagnosed at the age of 7 and he has effectively managed his symptoms without major complication for decades..

42. At all times relevant, he treated his Type 1 diabetes with an insulin pump that automatically delivers insulin into his abdomen.

43. Unbeknownst to Dr. Brennan, during the assault by Patrolman Rodgers and the K9, his insulin pump was damaged and stopped working properly.

44. As a result, in the days following the incident, he was not receiving insulin properly and became hyperglycemic.

45. On September 24, 2019, Dr. Brennan was brought to the York Hospital Emergency Room because his cognitive condition had significantly declined.

46. He was diagnosed with diabetic ketoacidosis and was ultimately admitted to the Intensive Care Unit.

47. Dr. Brennan remained in the hospital until September 27, 2019.

48. As a result of the incident described above, Dr. Brennan was issued a summons for the Class E crime of Refusing to Submit to Arrest or Detention.

49. The charge of Refusing to Submit to Arrest or Detention has since been dismissed.

### COUNT I – 42 U.S.C. § 1983 – Excessive Force
### (Defendant Jonathan Rodgers)

50. Plaintiff repeats and realleges each of the allegations set forth in paragraphs 1-49 of this Complaint as though the allegations were fully set forth herein.

51. The Defendant used excessive force, far in excess of the amount necessary and legally justified, in violation of Plaintiff's rights as guaranteed by the Fourth Amendment of the U.S. Constitution and 42 U.S.C. §1983, when he arrested Dr. Brennan on September 20, 2019.

52. The acts of Defendant Jonathan Rodgers as related in this Complaint were performed under the color of law.

53. The conduct and action of Defendant Jonathan Rodgers was unreasonable considering the facts and circumstances confronting him and were designed to and did cause physical injury, pain, and suffering.

54. As a direct and proximate result of the Defendants' use of excessive force, Plaintiff suffered a violation of his constitutionally protected rights and other related damages.

55. Dr. Stephen Brennan's injuries will continue into the future and he will require ongoing medical care and treatment.

### COUNT II – 42 U.S.C. § 1983 – Unlawful Seizure
### (Defendant Jonathan Rodgers)

56. The Plaintiff repeats and realleges each of the allegations set forth in paragraphs 1-55 of this Complaint as though the allegations were fully set forth herein.

57. The Defendant unlawfully seized Dr. Stephen Brennan on September 20, 2019 in violation of Plaintiff's rights as guaranteed by the Fourth Amendment of the U.S. Constitution and 42 U.S.C. §1983 when he arrested him without probable cause to believe that he committed a crime.

58. The acts of the Defendants as related in this Complaint were performed under the color of law.

59. As a direct and proximate result of the Defendant's unlawful seizure, Plaintiff suffered a violation of his constitutionally protected rights and other related damages.

### COUNT III- 42 U.S.C. § 1983
### (Defendant Town of York)

60. The Plaintiff repeats and realleges each of the allegations set forth in Paragraphs 1-59 of this Complaint as though the allegations were fully set forth herein.

61. At all times material to this complaint, Defendant Town of York, had in effect *de facto* policies, practices, customs and usages that were a direct and proximate cause of the unconstitutional conduct of Defendant Jonathan Rodgers.

62. On information and belief, the Town of York failed to establish guidelines for, and/or train, supervise or educate its police officers, including Patrolman Jonathan Rodgers, about correct practices and police procedures in the use of force and proper procedures in de-escalation, and K9 handling, thereby permitting the Defendant Jonathan Rodgers to be in a position to violate Dr. Brennan's federal and state constitutional and statutory rights.

63. On information and belief, the Defendant Town of York failed to effectively screen, hire, train, supervise, and discipline its police officers, including Patrolman Jonathan Rodgers, and the K9, for their propensity for violence and the use of excessive force, thereby permitting Defendant Jonathan Rodgers to be in a position to violate Dr. Brennan's federal and state constitutional and statutory rights.

64. Defendant Town of York being aware that such lack of effective screening and hiring and lack of training, supervision, and discipline, leads to improper conduct by its employee police officers, acted with deliberate indifference in failing to establish a program of effective screening and hiring, and failing to establish a program of training, supervision and discipline.

65. On information and belief, the Defendant Town of York failed to put into place and maintain a structure for risk containment and stress management relative to its employee police officers. Said structure was deficient, at the time of pre-selection and selection, to (a) evaluate and exchange information within the command structure about the performance of individual police officers; (b) train supervisory personnel to effectively and adequately evaluate the

performance of a police officer; and (c) otherwise put the command structure on notice that an individual or individuals were a significant risk to the public at large. The net effect of this was to permit police officers of the Defendant Town of York to function at levels of significant and substantial risk to the public at large.

66. As a result of a conscious policy, practice, custom or usage, the Town of York has permitted and allowed for the employment and retention of individuals as police officers whose individual circumstances place the public at large, or segments thereof, at substantial risk of being the victims of assaultive, abusive, or otherwise illegal and offensive behavior. Such policy, practice, custom and usage is a direct and proximate cause of the conduct alleged herein and otherwise a direct and proximate cause of the harm to Dr. Brennan.

67. The conduct of the Town of York was the direct and proximate cause of bodily and psychological harm, pain and suffering in violation of Dr. Brennan's rights as guaranteed by 42 U.S.C. §1983 and the fourth amendment to the United States Constitution and other related damages.

### COUNT IV – Excessive Force – Assault and Battery
### Supplemental State Law Action
### (Defendants Jonathan Rodgers and Town of York

68. The Plaintiff repeats and realleges each of the allegations set forth in paragraphs 1-67 of this Complaint as though the allegations were fully set forth herein.

69. The Defendants used excessive force in executing the arrest of Plaintiff.

70. The excessive force used was not objectively reasonable considering the facts and circumstance presented by the incident involving Plaintiff on September 20, 2019.

71. The actions of Defendant Jonathan Rodgers as described in this Complaint were performed in the course of his employment and the Town of York is vicariously liable for the same.

72. As a direct and proximate result of the use of excessive force, Plaintiff suffered bodily and psychological injury, pain and suffering and other related damages.

### COUNT V- Unlawful Arrest
### Supplemental State Law Action
### (Defendants Jonathan Rodgers and the Town of York)

73. The Plaintiff repeats and realleges each of the allegations set forth in paragraphs 1-72 of this Complaint as though the allegations were fully set forth herein.

74. The Defendants unlawfully arrested Dr. Stephen Brennan on September 20, 2019 without probable cause to believe that he committed a crime.

75. The actions of Defendant Jonathan Rodgers as described in this Complaint were performed in the course of his employment and the Town of York is vicariously liable for the same.

76. As a direct and proximate result of the unlawful arrest, Plaintiff suffered bodily and psychological injury, pain and suffering and other related damages.

### COUNT VI- Negligence
### (Defendants Jonathan Rodgers and the Town of York)

77. The Plaintiff repeats and realleges each of the allegations set forth in paragraphs 1-76 of this Complaint as though the allegations were fully set forth herein.

78. The Defendants owed Plaintiff a duty of care to conduct police operations in a reasonably safe manner that avoided unnecessary injury to Plaintiff.

79. Further, the Defendants owed Plaintiff a duty of care to handle and utilize the police K9 in a reasonably safe manner that avoided unnecessary injury to Plaintiff.

80. The Acts of the Defendants were negligent and breached their respective duties to Plaintiff.

81. As a direct and proximate result of the Defendants' negligence, Plaintiff suffered bodily and psychological injury, pain and suffering and other related damages.

## COUNT VII- VIOLATION OF THE MAINE CIVIL RIGHTS ACT

82. The Plaintiff repeats and realleges each of the allegations set forth in paragraphs 1-81 of this Complaint as though the allegations were fully set forth herein.

83. The conduct of Defendant Jonathan Rodgers as detailed above constitutes a violation of the Maine Civil Rights Act, 5 M.R.S.A. § 4682 *et seq.*

84. As a direct and proximate result of the Defendant's actions, Plaintiff suffered bodily and psychological injury, pain and suffering and other related damages.

WHEREFORE, the Plaintiff, Stephen Brennan, requests the Court enter judgment in his favor against the Defendants for violation of his constitutionally protected rights, painful and permanent physical injuries, permanent damage to his reputation in the community, physical and emotional pain and suffering, mental and emotional distress, loss of enjoyment of life, loss of earnings and earning capacity, past and future medical expenses, punitive damages, attorneys' fees, interest, costs, and such other and further relief as this Court deems just and proper.

## JURY DEMAND

A trial by jury is demanded.

DATED: October 9, 2020

                                     /s/ Alexander E. Spadinger
                                     Alexander E. Spadinger, Esq.
                                     Bar No. 765731
                                     aspadinger@shaheengordon.com
                                     *Attorney for Plaintiff*

SHAHEEN & GORDON, P.A.
P.O. BOX 977
DOVER, NH 03821
603-749-5000